1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10  DONALD SABADOS,

11          Petitioner,          No. CIV S-08-CV-1210 FCD CHS P

12      vs.

13  D.K. SISTO,

14          Respondent.          FINDINGS AND RECOMMENDATIONS

15  _____/

16  I.      INTRODUCTION

17          Petitioner, Donald Sabados, is a state prisoner proceeding *pro se* with a petition for

18  writ of *habeas corpus* pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving an indeterminate

19  sentence of fifteen years to life following his 1983 conviction in Los Angeles County Superior Court

20  for second degree murder.   Here, Petitioner does not challenge the constitutionality of that

21  conviction, but rather, the execution of his sentence, and specifically, the January 25, 2007 decision

22  by the Board of Parole Hearings (the "Board") finding him unsuitable for parole.  Upon careful

23  consideration of the record and applicable law, it is recommended that this petition for writ of

24  *habeas corpus* relief be denied.

25  II.     CLAIMS FOR REVIEW

26          Petitioner alleges six grounds for relief in his pending petition.   Specifically,

1

Petitioner's claims are as follows:

(1)   He has a liberty interest in parole that is protected by the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution;

(2)   No evidence in the record supports the Board's determination that he is unsuitable for parole under the California Code of Regulations[1] or recent court decisions;

(3)   No evidence in the record supports the Board's determination that he is unsuitable for parole, and there is no rational nexus between the evidence cited by the Board and ultimate decision reached at his hearing.

(4)   He meets seven of the nine circumstances tending to demonstrate parole suitability under the California Code of Regulations and cannot comply with those circumstances to any greater degree.

(5)   The Board's decision to deny parole for five years was unjustified because it was not supported by any evidence in the record demonstrating that he was unlikely to be deemed suitable for parole at an earlier time.

(6)   The Board's consideration and treatment of his commitment crime violates the terms of his plea agreement.

Read together, Petitioner's first four grounds for relief constitute a claim that Petitioner's federal right to Due Process was violated by the Board's determination that he was not suitable for parole, and they will be examined in subsection (A).  Subsection (B) will discuss Petitioner's fifth claim that the Board's decision to deny parole for five years was unjustified. Subsection (C) will address Petitioner's sixth and final claim that the Board's consideration and treatment of his commitment crime violates the terms of his plea agreement.

/////

---

[1] Petitioner cites to 15 CAL. CODE REGS. § 2281, which governs determination of parole suitability for life prisoners, throughout his petition for writ of *habeas corpus*.  Petitioner, however, stands convicted of second degree murder.  Therefore, 15 CAL. CODE REGS. § 2402, which governs determination of parole suitability for murders committed after November 8, 1978, is the regulation applicable to Petitioner's claims.  The applicability of section 2402 rather than section 2281 does not affect the substance of Petitioner's claims because, as the California Supreme Court has noted, the two regulations are identical.  *In re Shaputus*, 44 Cal. 4th at 1257 n.13.

2

III.    FACTUAL BACKGROUND

The basic facts of Petitioner's commitment crime were summarized by the Presiding Commissioner at Petitioner's parole hearing as follows:

> The crime occurred at the victim's residence on June 26th, 1982.  The victim was Walter Johnson, a 67-year-old man.  The victim's death occurred during the commission of a burglary and a robbery.
>
> Sabados and his crime partner, Michael Lawrence Baker, entered the residence with the intent of stealing money and other items.  The victim awoke and began to scream.  Sabados acknowledged that he placed a pillow over the victim's head to keep him quiet.
>
> The body was subsequently discovered a few days later.  The autopsy report revealed that the cause of death was a coronary arteriosclerosis.
>
> One of the items taken in the burglary was a shotgun.  The gun was discovered under Sabados' bed at his residence.
>
> . . . .
>
> The victim in this matter is Walter Johnson, a person who was 67 years old at the time of his death.  On June 26th, 1982, as alleged in count one, the crime occurring at his residence on that date where he was also the victim in counts two, three, and remaining.
>
> The offense falls within the meaning of the felony murder rule, wherein the victim's death occurred during the commission of a burglary and a robbery.  Following the investigation and the Defendant's apprehension, the Defendant was advised of his rights.  He waived his rights and acknowledged culpability in the commission of the burglary that occurred on the indicated crime date, and suggested that he and the Co-defendant entered the location with the intent to steal primarily money and other items.
>
> There was no intent to kill, and when the sleeping victim awoke and began screaming, the Defendant acknowledged that he placed a pillow over the victim's head to keep him quiet.  The victim's body was subsequently discovered a few days later.
>
> It was noted that the body had begun to decompose.  Autopsy Report 82-8179 has the results of an examination conducted on July 2nd, 1982.  It revealed that the cause of death was a coronary arteriosclerosis.
>
> One of the items taken in the burglary was a certain shotgun.  This firearm was subsequently located from where it was hidden, under the Defendant's bed, at his then residence.  The Defendant verified

3

that he had taken the shotgun, and that he was about to use it for hunting at the time he was arrested.

One of the purposes for the burglary was to obtain money for rent. The Defendant had been to the victim's residence previously, and had heard from others that the victim kept a lot of money within his home.  At the time the victim was discovered, his arms and hands were tied.

. . . .

The Defendant acknowledged that the victim had been tied up.  Other testimony by certain inmates who were housed with the Defendant in custody could have been offered at trial pertaining to certain 'bragging' they reportedly heard the Defendant give pertaining to the killing of 'the old man.'

(Pet. Ex.B at 9-12, Transcript of Petitioner's Parole Hearing, January 25, 2007).

Petitioner waived his right to a jury trial and pled guilty to second degree murder on June 13, 1983.  He received a sentence of fifteen years to life in prison.  Petitioner's minimum eligible parole release date passed on August 12, 1991.  On January 25, 2007, Petitioner appeared before the Board for his fourth subsequent parole suitability hearing.  After considering numerous positive and negative suitability factors, the panel concluded that Petitioner remained an unreasonable risk of danger to society, and thus he was not suitable for parole.  Petitioner then sought *habeas corpus* relief in the Los Angeles County Superior Court.  On November 13, 2007, the court denied the petition, finding that the Board's determination that petitioner was unsuitable for parole was supported by some evidence in the record.  Petitioner next sought relief in the state appellate court. The California Court of Appeal for the Second Appellate District denied the petition without comment.  The California Supreme Court denied review.  Petitioner filed this federal petition for writ of *habeas corpus* on February 6, 2009.  Respondent filed an answer on April 2, 2009, and Petitioner did not file a traverse.

IV.    APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

This case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of *habeas corpus* filed after

its enactment on April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997). Under AEDPA, an application for a writ of habeas corpus by a person in custody under the judgment of a state court may be granted only for violations of the federal Constitution or laws of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 n. 7 (2000). Federal *habeas corpus* relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

## V.      DISCUSSION

### A.      DUE PROCESS

Petitioner contends in four related claims that his federal right to due process of law was violated by the Board's 2007 determination that he was not suitable for parole. Petitioner first claims that he has a liberty interest in parole that is protected by the Due Process Clause to the United States Constitution. Second, Petitioner claims that his due process rights have been violated because no evidence in the record supports the Board's determination that he is unsuitable for parole under the California Code of Regulations or recent court decisions. Petitioner's third claim, which is closely intertwined with his second claim, is that no rational nexus exists between the evidence cited by the Board and its ultimate decision to deny him parole. In support of his third claim, Petitioner alleges that the Board improperly relied on the facts and circumstances of his commitment offense, his prison disciplinary history, the District Attorney's opposition to his release, and his psychological evaluation in concluding that Petitioner was unsuitable for parole. In Petitioner's fourth claim, he argues that he meets seven of the nine circumstances tending to demonstrate

suitability for parole under the California Code of Regulations and cannot comply with those circumstances to any greater degree.

### 1.   LIBERTY INTEREST IN PAROLE

Petitioner's first claim is that he has a constitutionally protected liberty interest in being released on parole.  The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits state action that "deprive[s] a person of life, liberty or property without due process of law." U.S. CONST. AMEND. XIV, § 2.  A person alleging a due process violation must first demonstrate that he or she was deprived of a protected liberty or property interest, and then show that the procedures attendant upon the deprivation were not constitutionally sufficient.  *Ky. Dep't. Of Corrs. v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).  A protected liberty interest may arise from either the Due Process Clause itself or from state laws.  *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).   In the context of parole, the United States Constitution does not, in and of itself, create a protected liberty interest in the receipt of a parole date, even one that has already been set. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).  However, when a state, such as California, elects to use mandatory language in its statutory parole scheme, it "'creates a presumption that parole release will be granted' when or unless certain designated findings are made, thereby giving rise to a constitutional liberty interest." *McQuillan*, 306 F.3d at 901 (quoting *Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 12 (1979)).

Under California law, prisoners serving indeterminate prison sentences "may serve up to life in prison, but they become eligible for parole consideration after serving minimum terms of confinement." *In re Dannenberg*, 34 Cal.4th 1061, 1078 (2005).  Generally, one year prior to an inmate's minimum eligible parole release date, the Board will conduct a hearing to determine an inmate's parole release date "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public." *In re Lawrence*, 44 Cal. 4th 1181, 1202 (2008) (citing CAL. PENAL CODE § 3041(a)).  The Board is instructed by statute to "set a release date unless it determines that the gravity of the current convicted offense or offenses, or the

6

timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration . . . ." CAL. PENAL CODE § 3041(b). California state prisoners who have been sentenced to prison with the possibility of parole, therefore, have a clearly established, constitutionally protected liberty interest in receipt of a parole release date. *Allen*, 482 U.S. at 377-78 (quoting *Greenholtz v Inmates of Neb. Penal*, 442 U.S. 1, 12 (1979)); *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007) (citing *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006)); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillion*, 306 F.3d at 903. Petitioner's claim that he possesses a constitutionally protected liberty interest in parole is correct, however, this does not end the due process inquiry.

## 2 & 3.  SUFFICIENCY OF EVIDENCE

Petitioner's second claim is that no evidence in the record supports the Board's determination that he is unsuitable for parole, and his third claim is that there is no rational nexus between the evidence cited by the Board and the Board's ultimate conclusion that he remained an unreasonable risk of danger to society.  During a parole proceeding, it is well established that inmates are not guaranteed the "full panoply of rights" afforded to criminal defendants under the Due Process Clause.  *See Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). Nonetheless, inmates are afforded limited procedural protections.  The Supreme Court has held that a parole board, at minimum, must give an inmate an opportunity to be heard and a decision informing him of the reasons he did not qualify for parole.  *Hayward v. Marshall*, 603 F.3d 546, 560 (9th Cir. 2010) (citing *Greenholtz*, 442 U.S. at 16).  As a matter of state constitutional law, denial of parole to a California inmate must be supported by "some evidence" demonstrating that the inmate poses an unreasonable risk of danger to society.  *Hayward v. Marshall*, 603 F.3d 546, at 562 (citing *In re Rosencrantz*, 29 Cal.4th 616, 128 (2002)).  *See also In re Lawrence*, 44 Cal.4th at 1191 (recognizing the denial of parole must be supported by "some evidence" that an inmate "poses a current risk to public safety"); *In re Shaputis*, 44 Cal.4th 1241, 1254 (2008) (same).  "California's 'some evidence' requirement is a component of the liberty interest created by the parole system of

1   [the] state," *Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010), making compliance with this

2   evidentiary standard mandated by the federal Due Process Clause.  *Pearson v. Muntz*, 606 F.3d 606,

3   609 (9th Cir. 2010).  Petitioner was thus entitled to an opportunity to be heard during his parole

4   hearing, a decision supported by "some evidence" that he remained a current risk to public safety,

5   and to be informed of the reasons he did not qualify for parole.

6           The analysis of whether a California parole board's suitability decision was supported

7   by "[some evidence] is framed by the [state's] statutes and regulations governing parole suitability

8   determinations . . . ." *Irons*, 505 F.3d at 851.  A federal court undertaking review of a "California

9   judicial decision approving . . . [the Board's] decision rejecting parole" must determine whether the

10  state court's decision "was an 'unreasonable application' of the California 'some evidence'

11  requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'"

12  *Hayward*, 603 F.3d at 562-63 (quoting 28 U.S.C. § 2254(d)(2)).  Accordingly, this court must "look

13  to California law to determine the findings that are necessary to deem [a petitioner] unsuitable for

14  parole, and then must review the record to determine whether the state court decision holding that

15  these findings were supported by 'some evidence' [] constituted an unreasonable application of the

16  'some evidence' principle." *Irons*, 505 F.3d at 851.

17          Title 15, Section 2402 of the California Code of Regulations sets forth various factors

18  to be considered by the Board in making its parole suitability findings for inmates convicted of

19  murder.  The regulation is designed to guide the Board's determination of whether the inmate would

20  pose an "unreasonable risk of danger to society if released from prison," and, thus, whether he or

21  she is suitable for parole.  *In re Lawrence*, 44 Cal.4th at 1202.  The Board is directed to consider all

22  relevant and reliable information available, including

23          the circumstances of the prisoner's: social history; past and present
            mental state; past criminal history, including involvement in other
24          criminal misconduct which is reliably documented; the base and other
            commitment offenses, including behavior before, during and after the
25          crime; past and present attitude toward the crime; any conditions of
            treatment or control, including the use of special conditions under
26          which the prisoner may safely be released to the community; and any

8

> other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 CAL. CODE REGS. § 2402(b).  In addition, the regulation lists nine specific circumstances tending to demonstrate suitability for parole, as well as six specific circumstances tending to demonstrate unsuitability for parole.  15 CAL. CODE REGS. § 2402(c) & (d).  The overriding concern is public safety, *In re Dannenberg*, 34 Cal.4th at 1086, and the focus of the inquiry is on the inmate's current dangerousness.  *In re Lawrence*, 44 Cal.4th at 1205.  Accordingly, under California law, the standard of review is not whether some evidence supports the reasons cited for denying parole, but whether some evidence indicates that an inmate's release would unreasonably endanger public safety.  *In re Shaputis*, 44 Cal.4th at 1254.  Therefore, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public."  *In re Lawrence*, 44 Cal4th at 1212.  In other words, there must be a rational nexus between the facts relied upon and the ultimate conclusion that the prisoner continues to be a threat to public safety.  *Id*. at 1227.

   In the instant case, the Board conducted Petitioner's suitability hearing interactively with him, discussing his attitude towards the commitment offense, his criminal, social and family history, his disciplinary record, his personal progress since becoming incarcerated, his history of drug and alcohol use and treatment, his psychological evaluation, his post-incarceration plans for employment and residence, and letters of support from family members.  At the conclusion of the hearing, Petitioner was given an opportunity to be heard.  At that time, he gave a statement to the Board detailing the reasons he felt he was suitable for parole.  After considering both positive and negative factors bearing on his suitability for parole, the Board concluded that Petitioner was not yet suitable because he would pose an unreasonable risk of danger to society or a threat to public safety if released.  (Pet. Ex. B at 101.)  The Board issued its decision to Petitioner orally, informing him of the reasons supporting the Board's determination that he was not yet suitable for parole.

1    In determining that Petitioner was unsuitable for parole, the Board relied in part on

2    the facts and circumstances of Petitioner's commitment offense.  A prisoner's commitment offense

3    can be a parole unsuitability factor if it was committed in an especially heinous, atrocious or cruel

4    manner.  15 CAL. CODE REGS. § 2281(c)(1).  The passage of time and attendant changes in the

5    inmate's psychological or mental attitude are also relevant factors to be considered in conjunction

6    with the commitment offense.  *In re Lawrence*, 44 Cal.4th at 1221.  Given the liberty interest that

7    California prisoners possess in their release on parole, the Ninth Circuit has cautioned that a

8    continued reliance on an unchanging factor, such as a prisoner's commitment offense or pre-

9    incarceration conduct, to support a finding of unsuitability for parole may, over time, constitute a

10   violation of due process where there is evidence of rehabilitation and the prisoner has served the

11   minimum term on his sentence.  *Irons*, 505 F.3d at 852-53 (9th Cir. 2007).  Thus, the Board may rely

12   on a commitment offense as some evidence that an inmate remains unsuitable for parole to the extent

13   that the facts and circumstances of the offense continue to remain probative to an assessment of the

14   inmate's current dangerousness.

15   Here, the Board found that Petitioner's commitment offense fits the regulatory

16   scheme for one that was committed "in an especially heinous, atrocious or cruel manner."  15 CAL.

17   CODE REGS. § 2402(c)(1).  The Board determined that the offense was carried out in a dispassionate

18   and calculated manner, 15 CAL. CODE REGS. § 2402(c)(1)(B); the victim was abused, 15 CAL. CODE

19   REGS. § 2402(c)(1)(C); the offense was carried out in a manner demonstrating a callous disregard

20   for human suffering, 15 CAL. CODE REGS. § 2402(c)(1)(D); and the motive for the crime was very

21   trivial in relation to the offense, 15 CAL. CODE REGS. § 2402(c)(1)(E).  The Los Angeles County

22   Superior Court held that "some evidence" supported the Board's findings, explaining  its reasoning

23   as follows:

24       The record reflects that on June 26, 1982, the Petitioner and his crime
         partner entered the residence of Walter Johnson, a 67-year old man.
25       The Petitioner had lost his job and needed money to pay the rent, and
         the two crime partners decided to rob the victim.  Upon entering his
26       residence, the victim began screaming and Petitioner put a pillow

10

over his face.  This led to the victim's sudden death from and [sic] apparent heart attack.

. . .

The Court finds that there is some evidence to support the Board's finding that the commitment offense was carried out in a dispassionate and calculated manner.  Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(b).  The two crime partners had decided that an old man would be an easy person to rob, and they entered a window and attacked him when he understandably reacted with great fear.  Their dispassionate and calculated offense directly led to the victim's death.  Furthermore, the motive for the crime was very trivial in relation to the offense.  Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(E).  The victim was killed to effectuate the robbery.

(Pet. Ex. J at 1.)

Petitioner's commitment offense, however, occurred approximately 25 years prior to the 2007 parole suitability determination.  It is possible that a decision based solely on the gravity of a 25 year old commitment offense could be considered arbitrary to the extent that the offense may no longer be probative to an assessment of the inmate's current future dangerousness, particularly where there also exists strong evidence of rehabilitation.  In this case, however, the Board linked the similarity of the motive underlying Petitioner's commitment offense to the motive underlying a serious disciplinary infraction committed by Petitioner in February 2000.  Moreover, the Board relied on several other factors in addition to Petitioner's commitment offense in reaching its conclusion that Petitioner remained an unreasonable risk of danger to society, including Petitioner's significant prison disciplinary record, the unreliability of his psychological evaluation, his participation in and attitude towards completing self-help, vocational, educational and self-help programming while incarcerated, and his attitude towards the importance of following rules within the institution.

The Board considered Petitioner's prison disciplinary record, 15 CAL. CODE REGS. § 2402(c)(6), in conjunction with his most recent psychological evaluation by Dr. John T. Rouse, 15 CAL. CODE REGS. § 2402(c)(5).  A prisoner's institutional behavior can render him unsuitable for parole where he has engaged in serious misconduct while incarcerated, and psychological factors

can demonstrate parole unsuitability if a prisoner has a history of mental problems relating to the commitment offense.  In addition, reliable information concerning an inmate's past and present mental state is relevant to the Board's parole suitability determination.  15 CAL. CODE REGS. § 2402(b).

Petitioner has incurred fourteen serious CDC 115 reports since entering the Department of Corrections in 1983.  His infractions have included transporting drugs, manufacturing alcohol, possessing drugs, and trafficking marijuana.  (Pet. Ex. J at1, Op. of Los Angeles County Superior Court, Nov. 13, 2007.)  Petitioner's most recent CDC 115 violation occurred in February 2000 for narcotic trafficking.  He explained the infraction to the Board as follows:

> Anyway, there was an individual in that prison who had a lot of money that I knew.  And he says to me, look, I'll make it easy for you.  Do you really want to see your kid, and your wife is whining about the money, and how he can do this.  You do this for me, and I'll provide her with the money, gas for the car, food, whatever she needs.  She wants to smoke pot, she can smoke pot, whatever she wants.  You just do this for me, and I did it.

(Pet. Ex. B at 60.)  The Board was very troubled by Petitioner's explanation, particularly because of its similarity to the motive underlying his commitment offense, and questioned Petitioner as follows:

> PRESIDING COMMISSIONER BRYSON:  But Sir, this is in the year 2000, right?
>
> INMATE SABADOS: Right.
>
> PRESIDING COMMISSIONER BRYSON: Does that have any resonance in your mind with the commitment offense where your buddy says, hey, you need money for rent, let's just go rip off this guy.  Does that have – does that remind you of anything like that?
>
> INMATE SABADOS: Sure, and now that you put it that way, certainly.
>
> PRESIDING COMMISSIONER BRYSON: Okay.  So that's what this Board is worried about.  How many years were intervening between 2000 and your reception date of 1983.  We're talking 17 years.  And somebody –
>
> INMATE SABADOS: I'm still making –

PRESIDING COMMISSIONER BRYSON: Yeah.

INMATE SABADOS: – stupid mistakes, yeah.

PRESIDING COMMISSIONER BRYSON: So there's a question in there.  Why?

INMATE SABADOS: Why?  Why haven't you changed, why are you still doing these things?  Well, certainly.  I agree with you.  I've given you plenty of ammunition.

(Pet. Ex. B at 60-61.)

In addition to the fourteen CDC 115 reports, the Board also considered the thirty CDC 128 reports incurred by Petitioner, the most recent infraction occurring in January 2006 for leaving his job assignment without permission.  (Pet. Ex. B at 102.)  The Board commented that "128As, Sir, are not nothing.  They show, especially the number of them in your case, it shows there are issues in the institution.  And they are very recent up until this very last year.  And so they indicate that there are still failure [sic] to obey the rules that are serious."  (Pet. Ex. B at 102-103.) The Board also noted that while Petitioner had no criminal record aside from his commitment offense his anti-social and criminal behavior had "actually accelerated once [he] came to the Department of Corrections, rather than decrease from the point of [his] commitment offense." (Pet. Ex. B at 35.)  Lastly, the Board expressed concern regarding the reliability of Dr. Rouse's psychological evaluation because, although it found Petitioner to be a favorable candidate for parole, it did not appear to consider Petitioner's significant history of misconduct while incarcerated and the effect that would have on Petitioner's ability to function outside of the institutional environment. Given Petitioner's significant record of failing to abide by the rules of the institution while incarcerated, it was reasonable for the Board to conclude he remained a risk to public safety.

The Board next considered Petitioner's participation in beneficial self-help, vocational, and educational programming.  15 CAL. CODE REGS. § 2402(b).  Activities undertaken while incarcerated can demonstrate parole suitability where such activities indicate an enhanced ability to function within the law upon release.  15 CAL. CODE REGS. § 2402(d)(9).  While

incarcerated, Petitioner obtained his G.E.D. and completed vocational training in Building

Maintenance, Auto Body and Fender Repair, and Biohazard Waste.  Petitioner gained work

experience in varying capacities, including yard crew, porter, culinary, metal work and cabinetry.

He was involved in Narcotics Anonymous ("NA") and Alcoholics Anonymous ("AA") until March

2005 when he received a two-year work assignment within the institution that conflicted with his

attendance at meetings.  Petitioner intended to resume his attendance at NA and AA meetings upon

conclusion of his work assignment, and he intended to continue his involvement in NA and AA upon

parole.  Petitioner also completed  various self-help programs during his incarceration, including

Breaking Barriers (four times), Anger Management (five times), and Life Plans for Recovery

(twice).  Petitioner indicated that he enjoyed reading, but did so for enjoyment and relaxation rather

than to further his education or self-help programming.

The Board found Petitioner's programming commendable in the above areas, but also

found that he had programmed insufficiently in other areas.  In particular, the Board expressed

concern over several remarks made by Petitioner during his parole hearing.  As explained, a

prisoner's "past and present mental state" is properly considered in a parole suitability

determination.  15 CAL. CODE REGS.§ 2402(b).  Specifically, Petitioner felt as though his

participation in self-help programming was not worthwhile and would not influence the Board's

decision regarding his suitability for parole.  (Pet. Ex. B at 56-58, 61-62,76.)  Nor did Petitioner

believe that his ability to remain disciplinary free within the confines of the institution was

indicative of his ability to function outside of the institution if paroled.  (Pet. Ex. B at 77-80.)  The

Board, however, noted that if Petitioner was unable to abide by the rules of the institution, it was

unlikely that he would be able to abide by the rules of society or the community once paroled.  An

inmate's record of misconduct in prison is one of the factors weighing against parole suitability that

the Board is permitted to consider when making its determination.  15 CAL. CODE REGS. §

2402(c)(6).  The Board was also troubled by Petitioner's attitude regarding both his own ability to

follow the rules of the institution and his rehabilitation.  The presiding commissioner expressed the

1   Board's concerns as follows:

2          Sir, you indicated that the Panel should move away from the
       commitment offense to rehabilitation. This Panel would like to move
3      away from the commitment offense to your rehabilitation.   The
       problem is you're still exhibiting the same mindset that led you to the
4      life offense in the first place.  And to summarize in one word, that
       word, Sir, would be arrogance.
5
       Sir, actions speak louder than words.  Just as in the commitment
6      offense, your affect . . . has the implication I'll do it my way, without
       anticipating the consequences of your actions.  And therefore, Sir,
7      you remain unpredictable and a serious threat to public safety.

8   (Pet. Ex. B at 105.)

9          Lastly, the Board noted that the Los Angeles County District Attorney opposed

10   Petitioner's release.  While opposition to release on parole by law enforcement based upon the

11   nature of a prisoner's commitment offense is insufficient on its own to support a parole board's

12   determination of unsuitability for parole, *Rosenkrantz v. Marshell*, 444 F.Supp.2d 1063, 1080 n.14

13   (C.D.Cal. 2006), such opposition may be properly considered in conjunction with other suitability

14   and unsuitability factors.  *See* 15 CAL. CODE REGS. § 2402(b) ("All relevant, reliable information

15   available to the panel shall be considered in determining suitability for parole.")  Here, the District

16   Attorney expressed grave concern regarding the attitude displayed by Petitioner during his parole

17   hearing, focusing on Petitioner's statements that he felt participation in positive programming was

18   essentially futile, and Petitioner's apparent belief that "good citizenship and social responsibility are

19   [not] necessary for him to demonstrate here in prison before he can be released."  (Pet. Ex. B at 84-

20   85.)  Moreover, the District Attorney, noting Petitioner's significant prison disciplinary record,

21   expressed doubt as to whether Petitioner was suitable for parole because he had not adequately

22   demonstrated that he could "obey the rules in a closed society."  *Id*. at 85.

23          After considering the above factors, the Board reasonably determined that Petitioner

24   would pose an unreasonable risk of danger to society or a threat to public safety if released from

25   prison.  Applying the federal *habeas corpus* review standard applicable to parole denials for

26   California state prisoners, it appears that "some evidence" supports the Board's determination that

Petitioner was not suitable for parole at the time of his 2007 hearing.  The Board considered both positive and negative factors bearing on parole suitability, but ultimately concluded that the circumstances tending to demonstrate suitability for parole did not outweigh the circumstances tending to demonstrate that Petitioner was not yet suitable for parole.  15 Cal. Code Regs. § 2402(b)-(d).  The circumstances of Petitioner's commitment crime combined with his significant institutional disciplinary record, his attitude towards complying with institutional rules and his failure to recognize the value of self-help programming provide the required modicum of evidence to support the Board's denial of parole.  As reviewed above, relevant portions of the evidentiary record support the evidence cited by the Board in determining Petitioner was unsuitable for parole, providing a rational nexus between that evidence cited and the Board's ultimate conclusion that Petitioner remained an unreasonable risk of danger to the public.  In addition, all factors articulated by the Board as the basis for its decision are permissible considerations in parole suitability determinations under California law.  15 CAL. CODE REGS. § 2402(b)-(d).  A reviewing court may not re-weigh the evidence before the Board, nor may the court substitute its own judgment for that of the Board.

The Board's decision withstands the minimally stringent "some evidence" standard.  Moreover, it is clear from the record that Petitioner was given an opportunity to be heard during his parole hearing and was informed of the reasons for the Board's decision.  Petitioner has received all process he was due and is thus not entitled to federal *habeas corpus* relief on his second or third claims challenging the evidence supporting the Board's parole suitability determination.

4.      THE NINE PAROLE SUITABILITY CIRCUMSTANCES

Petitioner's fourth claim is that he meets seven of the nine regulatory circumstances tending to demonstrate suitability for parole and could not possibly comply with those circumstances to any greater degree.  Title 15, section 2402 of the California Code of Regulations lists nine circumstances which tend to indicate that an inmate is suitable for parole.  These regulatory circumstances include:

(1) No Juvenile Record.  The prisoner does not have a record of

16

assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime.  The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

(7) Age.  The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for the Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

15 CAL. CODE REGS. § 2402(d).

Even assuming, *arguendo*, that Petitioner's assertion that he meets seven of the nine regulatory suitability circumstances listed above is meritorious, his claim does not entitle him to federal *habeas corpus* relief.  First, the list of circumstances to be considered is not exclusive because the Board is authorized by the Regulations to consider "[a]ll relevant, reliable information available."  15 CAL. CODE REGS. § 2402(b).  This includes, *inter alia*, regulatory circumstances tending to demonstrate unsuitability for parole, 15 CAL. CODE REGS. § 2402(c), which must be weighed by the Board against the circumstances Petitioner contends demonstrate his parole suitability.  Moreover, the circumstances tending to demonstrate suitability for parole do not

17

conclusively establish parole suitability if met.  Rather, the circumstances are "set forth as general guidelines" and "the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel."  15 CAL. CODE REGS. § 2402(c) & (d).  The principles of federal constitutional law discussed above require a reviewing court to determine whether "some evidence" supports the Board's determination that an inmate was unsuitable for parole, but do not authorize the reviewing court to re-weigh the parole suitability factors or to substitute its judgment for that of the Board.  As noted in subsection (A)(2), "some evidence" supports the Board's determination that Petitioner remained an unreasonable risk of danger to the public and was thus unsuitable for parole.  Petitioner is not entitled to federal *habeas corpus* relief on this claim.

### B.        FIVE YEAR DENIAL OF PAROLE

In his fifth claim, Petitioner contends that the Board's decision to deny parole for five years was unjustified because it was not supported by any evidence in the record that he was unlikely to be deemed suitable at an earlier time. Petitioner claims that he complied with all recommendations made to him by the Board at his 2002 parole hearing, which included remaining disciplinary free, upgrading vocationally and educationally, and participating in self-help programming and therapy.  Accordingly, Petitioner claims that Board's decision to deny him parole for a period of five years had no basis in the evidentiary record, thus violating his federal right to due process.  The Los Angeles County Superior Court considered and rejected Petitioner's claim, explaining its reasoning as follows:

> [T]he Court finds that the Board did not err in denying the Petitioner parole for a period of five years.  The reasons were specified in the Board's decision, and essentially repeated the rationale for denying parole.  The reasons need not be completely different from those justifying the denial of parole, and a sufficient basis for the five-year denial did appear in the record as a whole.  See In re Jackson (1985) 39 Cal.3d 464, 479.

(Pet. Ex. J at 2.)

As discussed extensively in section (A)(2 & 3) above, the Board's determination that

18

Petitioner was unsuitable for parole is supported by "some evidence" in the record.  The transcript of Petitioner's 2007 parole hearing clearly reflects the Board's determination that "it is not reasonable to expect that parole be granted at a hearing during the following five years."  (Pet. Ex. B at 103.)  There is no federal constitutional right to a subsequent parole hearing in any particular number of years.  Nor is there a federal constitutional restriction on the basis for a decision regarding a subsequent parole hearing.  Petitioner received all process he was due, which included a right to be heard and to be informed of the reasons he did not qualify for parole, *Greenholtz*, 442 U.S. at 16, and a right to a decision based on "some evidence," *Sass*, 461 F.3d at 1128-29.  The state court's decision affirming the Board's determination is not contrary to, or an unreasonable application of, clearly established federal law, and it is not based on an unreasonable determination of the facts in light of the evidence presented.  Petitioner is not entitled to federal *habeas corpus* relief on this claim.

C.     PETITIONER'S PLEA AGREEMENT

Petitioner's sixth and final claim is that the Board's determination that he was not suitable for parole violated his plea agreement because the Board recharacterized his commitment offense as a first degree murder and denied him parole on that basis.  Petitioner points out that he entered a guilty plea to second degree murder in exchange for the reciprocal benefit of receiving a lesser degree of punishment.  According to Petitioner, the Board's decision has denied him the benefit of his plea agreement because it treats him as though he is guilty of first degree murder and thus subject to the harsher punishments associated with that crime.  Petitioner's claim must fail because the Board's decision did not, in fact, alter Petitioner's plea agreement or sentence in any way.

Petitioner pled guilty to second degree murder.  CAL. PEN. CODE § 187.  Under California law, this crime carries a mandatory penalty of fifteen years to life imprisonment with the possibility of parole. CAL. PEN. CODE § 190(a).  This is the sentence Petitioner is currently serving. Petitioner has failed to show that his negotiated plea agreement was conditioned in any way upon

1  his receipt of a favorable parole decision at some point.  While Petitioner may have hoped or

2  expected to be released sooner, the maximum duration of his commitment was set at life long before

3  he appeared before the Board.  The Board's decision to deny him a parole release date did not

4  enhance or otherwise alter his plea agreement or punishment.

5        Moreover, had Petitioner declined the plea agreement and chosen to proceed to trial,

6  he bore the risk of being convicted of first degree murder with the special circumstance that it was

7  committed during a robbery and burglary, as well as the individual crimes of robbery and burglary.

8  Had Petitioner been convicted only on the first degree murder charge with the special circumstance,

9  for example, he faced either a sentence of death or a term of life imprisonment with no possibility

10  of parole.  CAL. PEN. CODE § 190.2(a)(17).  His plea to second degree murder removed the

11  possibility of a death sentence from the potential punishment Petitioner faced.  His plea also allowed

12  him to be considered for parole after serving a minimum term on his punishment.  Therefore, his

13  allegation that he is being denied the reciprocal benefit of his plea agreement, a lesser degree of

14  punishment, has no merit.  Petitioner is not entitled to federal *habeas corpus* relief of this claim.

15  VI.  CONCLUSION

16        Accordingly, IT IS RECOMMENDED that Petitioner's petition for writ of *habeas*

17  *corpus* be denied.

18        These findings and recommendations are submitted to the United States District

19  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one

20  days after being served with these findings and recommendations, any party may file written

21  objections with the court and serve a copy on all parties.  Such a document should be captioned

22  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

23  shall be served and filed within seven days after service of the objections.  Failure to file objections

24  within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*,

25  158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In any

26  objections he elects to file petitioner may address whether a certificate of appealability should issue

in the event he elects to file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: September 7, 2010

*Charlene H. Sorrentino*

CHARLENE H. SORRENTINO
UNITED STATES DISTRICT COURT